UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD SIMS,

           Petitioner,

                                            CASE NO. 2:13-CV-14715

v.                                 JUDGE BERNARD A. FRIEDMAN
                                       MAGISTRATE JUDGE PAUL J. KOMIVES

RANDALL HAAS,

           Respondent.

_____/

## REPORT AND RECOMMENDATION

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.     *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.     *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     D.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     E.     *Sufficiency of the Evidence (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     F.     *Jury Issues (Claims II & VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          1.     *Accident Instruction (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          2.     *Response to Jury Request (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
     G.     *Prosecutorial Misconduct (Claims III & V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
               a.  Appeal to Sympathy (Claim III) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
               b.  Attack on Witness's Credibility (Claim V.A) . . . . . . . . . . . . . . . . . . . . . . . . 22
               c.  Bolstering (Claim V.B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
               d.  Questioning Petitioner About Employment Status (Claim V.C) . . . . . . . . . . . . . . 24
     H.     *Gruesome Photograph (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     I.     *Ineffective Assistance of Counsel (Claims II-IV, X)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
               a.  Failure to Request Accident Instruction (Claim II) . . . . . . . . . . . . . . . . . . . . . . 29
               b.  Failure to Object to Prosecutorial Misconduct (Claims III & X.A) . . . . . . . . . . . 31
               c.  Failure to Object to Evidence of Prior Convictions (Claim IV) . . . . . . . . . . . . . . 32
               d.  Failure to Object to Response to Jury Request (Claim X.B) . . . . . . . . . . . . . . . . 32
     J.     *Cumulative Error (Claim IX)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
     K.     *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . 34
          1.     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
     L.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Gerald Sims is a state prisoner, currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

2.      On March 26, 2010, petitioner was convicted of first degree felony murder, MICH. COMP. LAWS § 750.316(1)(b); assault with intent to rob while armed, MICH. COMP. LAWS § 750.89; possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On May 25, 2010, he was sentenced to a mandatory term of life imprisonment without possibility of parole on the murder conviction, concurrent terms of 25-50 years' and 1-5 years' imprisonment on the assault and felon in possession convictions, respectively, and to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.      BECAUSE THE ONLY WITNESS TO THE SHOOTING SAID IT WAS AN ACCIDENT, THE PROSECUTION DID NOT PROVE BEYOND A REASONABLE DOUBT THAT THE SHOOTER ACTED WITH THE MALICE NEEDED TO SUPPORT A CONVICTION FOR FELONY MURDER.

> II.     IN THE ALTERNATIVE, THE TRIAL WAS UNFAIR BECAUSE THE JURY WAS NEVER TOLD THAT ACCIDENTAL CONDUCT COULD NEGATE THE MALICE ELEMENT. THE ERROR IS PLAIN, OR IN THE ALTERNATIVE COUNSEL WAS INEFFECTIVE FOR NOT REQUESTING AN ACCIDENT INSTRUCTION.

III.    THE PROSECUTOR'S REBUTTAL SUMMATION, WHICH ASKED THE JURORS TO IMAGINE THEMSELVES THE VICTIMS OF A CRIME FOR WHICH, AS HERE, THERE WAS SCANT CORROBORATION, WAS AN IMPROPER APPEAL TO EMOTION AND AN IMPROPER ATTEMPT TO DIMINISH THE PROSECUTOR'S BURDEN OF PROOF. THE ERROR IS PLAIN, OR IN THE ALTERNATIVE COUNSEL WAS INEFFECTIVE FOR NOT OBJECTING.

IV.    IN THIS ROBBERY/MURDER PROSECUTION, TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE PROSECUTOR'S USE OF TWO PRIOR FELONY CONVICTIONS, INCLUDING ONE FOR ROBBERY, TO IMPEACH HIS CLIENT'S CREDIBILITY.

Petitioner was appointed substitute counsel, who filed a supplemental brief raising the following

additional claims:

I.    BECAUSE THE ONLY WITNESS TO THE SHOOTING SAID IT WAS AN ACCIDENT, THE PROSECUTION DID NOT PROVE BEYOND A REASONABLE DOUBT THAT THE SHOOTER ACTED WITH THE MALICE NEEDED TO SUPPORT A CONVICTION FOR FELONY MURDER. [SUPPLEMENTAL ARGUMENT I OF THE PRINCIPAL BRIEF ON APPEAL.]

II.    THE PROSECUTOR'S MISCONDUCT DENIED DEFENDANT A FAIR TRIAL.

III.    THE DEFENSE OBJECTED TO ADMISSION OF A GRAPHIC AUTOPSY PHOTOGRAPH OF THE DECEASED, WHICH WAS SUBSTANTIALLY MORE PREJUDICIAL THAN PROBATIVE AND SERVED NO PURPOSE OTHER THAN TO INFLAME THE PASSIONS OF THE JURY. IN ADMITTING THE PHOTOGRAPH, THE TRIAL COURT ERRED AND DENIED THE DUE-PROCESS RIGHT TO A FAIR TRIAL.

IV.    THE JURY ASKED TO REVIEW THE TESTIMONY OF STAR-WITNESS MYERS AND INVESTIGATOR CLEMONS. THE COURT SUMMARILY DENIED THIS REQUEST AND ALSO FAILED TO ADVISE THE JURY OF THE POSSIBILITY THAT IT COULD HAVE SUCH AN OPPORTUNITY AT A LATER TIME.  THIS TRIAL COURT ERROR INFRINGED ON DEFENDANT'S DUE PROCESS RIGHT TO A FAIR TRIAL.

V.    INEFFECTIVE ASSISTANCE OF COUNSEL DENIED DEFENDANT A FAIR TRIAL.

VI.    THE CUMULATIVE EFFECT OF ERROR REQUIRES THAT
       DEFENDANT BE GRANTED A NEW TRIAL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Sims*, No. 298696, 2012 WL 5193211 (Mich. Ct. App. Oct. 18, 2012) (per curiam).

    4.    Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The

Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People*

*v. Sims*, 493 Mich. 968, 829 N.W.2d 212 (2013).

    5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on November 14, 2013.  As grounds for the writ of habeas corpus, he raises the nine claims that he

raised in the state courts.

    6.    Respondent filed his answer on May 20, 2014.  He contends that petitioner's second

(jury instruction), third and fifth (prosecutorial misconduct), and seventh (response to jury request)

claims are barred by petitioner's procedural default in the state courts, and that all of petitioner's

claims are without merit.

B.    *Factual Background Underlying Petitioner's Conviction*

    Petitioner's convictions arise from the death of Frederick Burrell on December 13, 2009.

The evidence adduced at trial was briefly summarized by the Michigan Court of Appeals:

> Defendant's convictions arise from the December 13, 2009, shooting death of
> Frederick Burrell in southwest Detroit. Burrell was in a parked car on the street with
> Ashley Myers, who was performing a sexual act for money, when someone opened
> the car door, pointed a gun at Burrell, and demanded money. As Burrell attempted
> to drive away, he was shot in the back of the head and died. The principal evidence
> against defendant was Myers's testimony. Myers identified defendant as the person
> who shot Burrell and also testified that defendant was the person who arranged her
> "date" with Burrell. At trial, defendant presented an alibi defense. Defendant and his
> girlfriend both testified that they were together at another location at the time of the
> shooting. Defendant further argued that Myers's testimony was inconsistent and not
> credible.

4

*Sims*, 2012 WL 5193211, at *1.  The evidence was more fully summarized in petitioner's initial brief

in the Michigan Court of Appeals:

> At about 6:00 a.m. on December 13, 2009, Detroit police officers responding to a radio call went to a field located near the corner of Buchanan Street and Military Street in southwest Detroit.  There, a dead man, Frederick Burrell, sat, pants unzipped, in the driver's seat of a Chevy Cavalier.  He had been shot in the back of the head.  There was no evidence of stippling around the wound, which meant that the bullet had been fired from a distance of more than two feet.  When the police arrived, the car's doors were closed, but the absence of bullet holes from the outside going in, together with the position of the body and the location of the blood inside the vehicle meant that the driver's side rear door must have been open when the shot was fired.
>
> The person who called the police was Amanda Pauley (also referred to as Amanda Vaughn), a prostitute.  Early that morning, she was in a "dope house" on Military Street with her boyfriend, Moon and another man named Jose.  She heard a loud banging on the back door.  Someone yelled, "Amanda, open the door, open the fuckin' door."  She opened the door to find her friend and fellow prostitute, Ashley Myers.  Myers was crying hysterically.  Pauley asked her "What the hell is goin' on?"  Myers answered, "My date got shot; somebody shot my date."  When Pauley asked for an explanation, Myers said, "We were parked on Hammond.  The guy came up and tried to open the door and demanded money.  My date tried to take off, and he got shot, and I don't know what to do."
>
> Pauley left to go pick up some food she had already ordered.  Myers asked her to "cop some dope"–fifteen dollars worth–while she was out.  Along the way, Pauley saw a car in the field, just as Myers had told her.  She called 9-1-1.
>
> Later that morning, police officers arranged to take Myers and Pauley to the homicide bureau for questioning.  Myers was hesitant and worried.  When Pauley pushed her to name the shooter.  Myers just cried and shook her head.  When Pauley kept pressing for a name, Myers said, "Amanda, I can't, he'll kill me."
>
> At the homicide bureau, Myers was questioned by Investigator Roger Clemmons.[1]  She told Clemmons that the shooting victim, Burrell, had paid her to have sex with him, and that they were parked in his car, engaged in a sex act, when the shooting occurred.  She said the shooter wore a multi-colored hoodie, and looked like a man she knew named "King."  She gave Clemmons several other names as well, including that of Gerald Sims, or "G," whom she said arranged the date with Burrell.
>
> On the way back from this first interview, Myers told Pauley that the shooter was Gerald Sims: "Amanda, it was G."

---

[1]In petitioner's state court brief, the investigator's name is spelled alternatively as "Clemons" and "Clemens."  The state court transcript spells the name "Clemmons."  I have used this spelling in quoting petitioner's brief.

A couple of days later, Myers was seated at a Coney Island restaurant when Gerald Sims and his girlfriend, Star, walked in. They saw her, and sat at her table. The three of them talked and ate. Star asked Myers what happened to her date. Myers told her, and Sims, about the shooting.

The three of them decided to go to a dope house and get high. They did. While there, Star went downstairs, leaving Myers and Sims alone. Sims looked at her, and then said, "If you ever speak of this I'll kill you." Myers assured him he didn't have to worry.

According to Myers, this was not the first time Sims had threatened her. A couple of months before the shooting, in reference to a different incident, Sims had told her to keep her mouth shut unless she wanted to be "six feet under." She was afraid of him. She thought he was "gang-affiliated" and had just finished serving 25 years in prison, and he made it a point to let people know not to mess with him.

Myers went home to her mother's house, where she felt safer. Later, she went back to the police station for a second interview. To relax herself, she first snorted some heroin.

At the beginning of the second interview, Myers still insisted that she did not see the shooter's face. This time, though, Investigator Clemmons was not nice. He yelled, and told her that she was lying. Eventually, she "broke down and told the truth." She told Clemmons that "G"–Gerald Sims–was the shooter.

At trial Myers told a similar story. She said it was Gerald Sims who interrupted the sex act and demanded money from her date, Burrell, by saying "Run your pockets." When she sat up and saw Sim's face, he told her to shut up and look out the window. Sims demanded money three or four times, and finally Burrell said he had some in his sock. Burrell leaned forward as if reaching for the money, but instead put the car in drive and stomped on the gas.

The car jolted forward. Myers testimony about what happened next was as follows:

Q:    And then when the car starts in motion, when does the shot occur?

A:    Um, right when he–when he puts the car into drive, and it jolts forward, I remember the–the door slammed and hit G's arm, and that's when the gun went off.

Q:    Okay. It hit G's arm?

A:    (Nodding)

Q:    How do you know that?

A:    Well, I don't know. I figured it would, 'cause it jolted forward–

Q:    (Interposing) Tell us what you saw and tell us what you heard.

A:    All's I know is when the car–when the car jolted forward, that's when the gun went off, when we tried to pull off.

Burrell, struck by a bullet in the back of the head, slumped over the driver's wheel. The car continued to move. Myers had to crawl halfway onto Burrell's lap

6

to remove his foot from the gas pedal and bring the car under control. The car came to a stop in the field where Pauley would later see it, and call the police.

The defense called three witnesses. The first was Christopher Farish, who knew Ashley Myers "from around the neighborhood." He'd had "a few" "personal dealing" with her. She had a poor reputation for truthfulness.

Farish had witnessed an incident in which Myers and an accomplice had cheated another of Myers's client's. Myers and the client were engaged in an act of sex when Myers's accomplice interrupted and, as the accomplice put it, "ran that [client's] pockets." Myers and the accomplice laughed about it afterwards. The accomplice was in his mid-to-late twenties, 5' 10" or 5' 11" with a mustache, and a "little bit darker skinned" than defense counsel.

The remaining defense witnesses were Staretta Humphrey, Gerald Sims's girlfriend, and Mr. Sims himself. They were together at the time of the shooting. They had been out walking the street (like Myers and Pauley, Humphrey was a prostitute) when a man in a car had approached, wanting to pay for sex with a woman. He wasn't interested in Humphrey, but Sims was able to arrange a "date" for him with Myers, who'd happened by while he and Sims were talking. The man paid Sims $10 for his efforts. At that point, Sims and Humphrey had left to smoke crack in the nearby abandoned house where they stayed. While smoking, they heard a gunshot. They went outside (Sims first, and Humphrey a "hot second" later) and saw a car in a field. Expecting the police to arrive soon, they walked a few blocks away, where Humphrey could ply her trade, and Sims could keep watch, free from police harassment.

Neither of them learned until days later, when they met Myers at the Coney Island, that the person who'd been shot was Myers's date.

Police sergeant Matthew Gnatek had spoke to Gerald Sims in the days following the shooting. Sims had not at first admitted to knowing Burrell or arranging his date with Myers. It was "like pulling teeth" to get him to admit that. Eventually, he'd said he got paid $10 for arranging Burrell's date with Myers, left with Star Humphrey, and heard gunshots while with her. Sims had said there was more than one shot–five shots, a pause, and then one more.

Sims had also told Gnatek that he suspected Myers was in on the murder, and that Myers was setting him up.

Def.-Appellant's Br. on App., in *People v. Sims*, No. 298696 (Mich. Ct. App.), at 2-7 (footnotes and

citations to trial transcript omitted).

C.    *Procedural Default*

Respondent contends that several of petitioner's claims are barred by his procedural default

in the state courts. The Court should decline to dismiss petitioner's claims on this basis. Even if

7

petitioner's claims are defaulted, petitioner may have his defaulted claims reviewed on the merits if he is able to establish cause for, and prejudice attributable to, his default.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).  With respect to each claim petitioner raises, he contends that counsel was ineffective for failing to object. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Consideration of counsel's effectiveness, however, depends in part on consideration of petitioner's underlying claims.  Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or
(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting

*Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

10

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements

of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the

decisions of lower federal courts are useful in assessing the reasonableness of the state court's

resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v.*

*Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D.

Mich. 2002) (Tarnow, J.).[2]

E.      *Sufficiency of the Evidence (Claim I)*

        Petitioner first contends that the evidence was insufficient to prove his guilt beyond a

reasonable doubt.  The Court should conclude that petitioner is not entitled to habeas relief on this

claim.

        1.      *Clearly Established Law*

        The Due Process Clause of the Fourteenth Amendment "protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA

standard for habeas review of sufficiency of the evidence challenges, "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*

*v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the

evidence, draw inferences and resolve conflicting inferences from the record in favor of the

---

        [2]Although several of petitioner's claims were defaulted by the Michigan Court of Appeals, the
court reviewed the merits of each claim for plain error.  The Sixth Circuit has "squarely endorsed the
view that 'a federal constitutional claim reviewed by a state court for "plain error" can be considered
"adjudicated on the merits" for the purpose of receiving deference under AEDPA.'" *Bond v. McQuiggan*,
506 Fed. Appx. 493, 498 n.2 (6th Cir. 2012) (quoting *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir.
2009)).  Thus, the AEDPA standard of review applies to all of petitioner's claims.

prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*,

*Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "under

*Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,'

but the minimum amount of evidence that the Due Process Clause requires to prove the offense is

purely a matter of federal law."  *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*,

443 U.S. at 324 n.16).  Under Michigan law, the common law crime of murder is defined as second

degree murder, and is punishable by up to life imprisonment.  *See* MICH. COMP. LAWS § 750.317.

Second degree murder consists of four elements: (1) a death; (2) caused by an act of the defendant;

(3) with malice; and (4) without lawful justification or excuse.  *See People v. Smith*, 478 Mich. 64,

70, 731 N.W.2d 411, 414-15 (2007) (citing *People v. Goecke*, 457 Mich. 442, 464, 579 N.W.2d 868

(1998)).  "Some evidence must be presented regarding each element of the crime or from which

those elements may be inferred."  *People v. Goecke*, 457 Mich. 442, 470, 579 N.W.2d 868 (1998)

(citing *People v. Doss*, 406 Mich. 90, 100-01, 276 N.W.2d 9 (1979)).  In order to show malice, the

prosecution must establish one of three mental states on the part of the defendant at the time of the

killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high

risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable

result.  *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*,

409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980).  The prosecution may establish the

elements of a crime through circumstantial evidence that creates a reasonable inference that an

element is satisfied.  *See Kelly v. Jackson*, 353 F. Supp.2d. 887, 891 (E.D. Mich. 2005) (citing

*People. v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868 (1998)).  As the Supreme Court has

explained:

> Admittedly, circumstantial evidence may in some cases point to a wholly incorrect
> result.  Yet this is equally true of testimonial evidence.  In both instances, a jury is

13

> asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Holland v. United States*, 348 U.S. 121, 140 (1954).

Second degree murder is elevated to first degree murder by the showing of some additional element. Relevant here, first degree murder is a second degree murder "committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping." MICH. COMP. LAWS § 750.316(1)(b). Thus, the elements of first degree felony murder are: "(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in M.C.L. § 750.316." *People v. Turner*, 213 Mich. App. 558, 556, 540 N.W.2d 728, 732 (1995) (per curiam).

2.      *Analysis*

Petitioner contends that the evidence was insufficient to support his murder conviction because the prosecution failed to prove beyond a reasonable doubt that he acted with malice. The Michigan Court of Appeals rejected this claim, reasoning that Myers's testimony that petitioner held a loaded gun to the back of Burrell's head, "coupled with the fact that Burrell was shot in the back of the head when he attempted to escape," provided "sufficient circumstantial evidence to permit a rational trier of fact to reasonably infer that defendant possessed the required malicious intent for felony murder." *Sims*, 2012 WL 5193211, at *2. The court also rejected petitioner's argument that

14

Myers's testimony established that the shooting was accidental.  The court explained:

> Contrary to what defendant suggests, Myers did not observe the gun accidentally discharge or even see the door hit defendant's arm.  Myers specifically testified that she observed defendant pointing a gun at the back of Burrell's head, as he directed Burrell to "[r]un [his] pockets."  Defendant directed Myers to "look out the window," and after Burrell hurriedly put the car in drive and stomped on the gas pedal in an attempt to escape, Myers *heard* a gunshot.  Even if Myers *thought* the door might have hit defendant's arm, there is no requirement that a jury arrive at the same supposition as a witness.

*Id*.  This determination was reasonable.

From the evidence presented, a rational jury could determine that petitioner intentionally fired at Burrell when Burrell attempted to flee.  Myers's testimony does not alter this conclusion.  Although Myers initially testified that the door hit petitioner's arm right before the gun was fired, she clarified that she did not actually see this happen, but merely assumed that it must have.  And even if the car door in fact hit petitioner's arm, it does not necessarily follow that this caused petitioner to discharge the gun accidentally.  The jury was free to draw its own inferences from the evidence, and it is well established that the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient.  *See Jackson*, 443 U.S. at 326.  Myers's testimony was sufficient to support a conclusion that petitioner deliberately fired his gun at Burrell as Burrell attempted to escape the robbery, an act from which the jury could infer that petitioner intended to kill Burrell, commit great bodily harm, or create a high risk of death or great bodily harm.  *See People v. Fields*, No. 266738, 2007 WL 1712619, at *1 (Mich. Ct. App. June 14, 2007) ("Shooting a gun at a person at such close range clearly indicates an obvious disregard of life-endangering consequences."); *People v. Williams*, No. 232827, 2004 WL 2124705, at *5 (Mich. Ct. App. Sept. 23, 2004) ("Here, defendant concedes that there was evidence that he fired at a door.  Also, there was evidence that someone had just come to answer the door, that defendant knew that

15

someone had done so, and, in fact, defendant had yelled for the person to get back before firing the shot at the door. Because the natural tendency of firing a gun at a door behind which someone is standing is to cause death or great bodily harm, there was evidence from which a rational factfinder could find beyond a reasonable doubt that defendant acted with malice."). *See generally*, *Aaron*, 409 Mich. at 729, 299 N.W.2d at 327 (malice may be inferred where defendant "intentionally set in motion a force likely to cause death or great bodily harm."); *People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001) (malice may be inferred from evidence that establishes "the intent to do an act that is in obvious disregard of life-endangering consequences.").

As noted above, the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses. The jury, as the finder of fact, was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution. In light of the Myers's testimony, the verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. It therefore follows that the Michigan Court of Appeals's rejection of this claim was reasonable.

F.      *Jury Issues (Claims II & VII)*

Petitioner next raises two issues relating to the jury. In Claim II, petitioner contends that he was denied a fair trial by the absence of an accident instruction. In Claim VII, he contends that the trial court improperly refused the jury's request to rehear testimony. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

      1.      *Accident Instruction (Claim II)*

Petitioner first contends that he was denied a fair trial by the absence of an accident

16

instruction.  The Michigan Court of Appeals rejected this claim, concluding that because petitioner "did not request an instruction on accident, . . . the trial court was not obliged to provide it sua sponte." *Sims*, 2012 WL 5193211, at *2.  This determination was reasonable, for two reasons.  First, as the Sixth Circuit has repeatedly recognized, "[a] trial judge's failure to give an unrequested instruction is not an error cognizable in a federal habeas proceeding." *Miller v. Grant*, No. 93-2081, 1994 WL 102977, at *2 (6th Cir. Mar. 25, 1994) (citing *Manning v. Rose*, 507 F.2d 889, 895 (6th Cir. 1974)); *accord Bailey v. Smith*, No. 06-14099, 2008 WL 2607830, at *14 (E.D. Mich. June 30, 2008) (Hood, J., adopting Report of Komives, M.J.).  Because petitioner did not request an accident instruction, he is not entitled to habeas relief based on the trial court's failure to give such an instruction.

Second, it is well established that a court's failure to give an instruction on a defense theory of the case "does not deprive the defendant of his constitutional right to due process if the evidence produced during trial was insufficient to warrant such an instruction." *Allen v. Morris*, 845 F.2d 610, 617 (6th Cir. 1988); *see also*, *Gimotty v. Elo*, 40 Fed. Appx. 29, 33-34 (6th Cir. 2002).  Here, there was no evidence presented that would have supported an accident instruction.  Myers's testimony did not provide such evidence; as explained above, she clarified that she was merely speculating that the car door hit petitioner's arm.  Petitioner himself did not testify that the shooting was accidental.  On the contrary, petitioner and his girlfriend testified that he was not involved in the shooting at all.  Thus, even if an accident instruction had been requested, the trial court would not have erred in refusing to provide such an instruction.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2. *Response to Jury Request (Claim VII)*

17

Petitioner next contends that the trial court erred in responding to a request from the jury. After about 90 minutes of deliberations, the jury sent a note to the court requesting the transcripts of the testimony of Myers and Clemmons. *See* Trial Tr., Vol. V, at 62. The court informed the jury that the transcripts were not available, and that it would take several days to get transcripts made, so "[a]t this time, I am going to say, no." *Id*. at 63. The Michigan Court of Appeals rejected petitioner's claim, concluding that the trial court had not abused its discretion because the jury's request "was unreasonable because it was made less than 90 minutes after the jury began deliberations" and because "the trial court's instruction in response to the jury's request did not foreclose the possibility that the testimony could be reviewed later." *Sims*, 2012 WL 5193211, at *7. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner's claim fails for several reasons. First, petitioner has not cited to, nor have I located, any case holding that a blanket prohibition on rereading testimony is impermissible as a matter of *federal constitutional* law, as is necessary for the claim to be cognizable on habeas review. At a minimum, this absence of jurisprudence makes it impossible to conclude that the Michigan Court of Appeals's rejection of petitioner's claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" so as to warrant habeas relief under 28 U.S.C. § 2254(d)(1). *See Friday v. Straub*, 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001) (Gadola, J.). Second, even applying the standards applied by the federal courts in direct appeals of federal criminal convictions, petitioner's claim fails. The decision whether to reread testimony is "uniquely committed to the discretion of the trial court." *United States v. Crowley*, 285 F.3d 553, 561 (7th Cir. 2002); *see also*, *Gibbs v. Bolden*, 65 Fed. Appx. 519, 521-22 (6th Cir. 2003). Here, the trial judge could reasonably conclude that reading

18

back the testimony was not warranted under the circumstances of the case. The testimony in petitioner's trial was neither extensive nor complex, *see United States v. Howard*, 80 F.3d 1194, 1202 (7th Cir. 1996), and compliance with the jury's request would have been difficult and time-consuming. *See United States v. Boulerice*, 325 F.3d 75, 85 (1st Cir. 2003) (difficulty in complying with request is a valid reason for refusing to reread testimony); *United States v. Rodgers*, 109 F.3d 1138, 1143 (6th Cir. 1997) (same); *United States v. Krout*, 66 F.3d 1420, 1433 (5th Cir. 1995) (court may refuse to reread testimony where doing so would take an inordinate amount of time); *Cottrel v. New York*, 259 F. Supp. 2d 300, 306 (S.D.N.Y. 2003) (same). Third, the trial judge did not deny the jury's request for the testimony outright. Rather, the judge explained that transcripts were not available and that reading of the testimony requested would take a significant amount of time. The court ultimately left it to the jury, however, to decide whether it still wanted to hear the testimony. There was no abuse of discretion by the trial judge in responding to the jury's request in this manner. *See United States v. Gill*, 75 Fed. Appx. 322, 328 (6th Cir. 2003); *cf. Gittens v. Scully*, 737 F. Supp. 840, 843 (S.D.N.Y. 1990) (no abuse of discretion where trial judge did not deny outright jury's request for testimony, but postponed reading of testimony until jury had deliberated further). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.   *Prosecutorial Misconduct (Claims III & V)*

Petitioner next contends that the prosecutor committed misconduct in several respects. The Court should conclude that petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

   1.   *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough

19

that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). *Darden* constitutes "[t]he 'clearly established Federal law' relevant" to a prosecutorial misconduct claim. *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case-determinations.'" *Parker*, 132 S. Ct. at 2155 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In reviewing whether prosecutorial comments deprived a defendant of a fair trial, a court may not consider the remarks in isolation, but must consider the remarks in the context of the entire trial, including the prosecutor's appropriate comments, the court's instructions to the jury, and the evidence presented in the case. *See Brown v. Payton*, 544 U.S. 133, 144 (2005); *United States v. Young*, 470 U.S. 1, 11 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 636, 645 (1974). Even on direct review, where AEDPA deference does not apply, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Young*, 470 U.S. at 11.

      2.    *Analysis*

           *a.  Appeal to Sympathy (Claim III)*

In his third claim, petitioner contends that the prosecutor improperly appealed to the jury's sympathy during rebuttal. During closing argument, defense counsel extensively attacked Myers's credibility. *See* Trial Tr., Vol. V, at 22-27, 28, 30-31. In particular, counsel argued that apart from Myers's testimony, there was no "independent tangible evidence . . . to suggest that Mr. Sims

20

committed this offense." Trial Tr., Vol. V, at 23.  The prosecutor responded to this argument during

rebuttal.  With respect to the absence of any corroborating evidence, the prosecutor argued:

> If you go out to lunch, break for lunch, and go over to Greektown and you
> will see the parking lot, and you go up to the 6th or 7th floor and somebody comes
> out from behind the post, give me a while [sic] – give me your purse.  You can tell
> their race, their sex, general body, big man, if he has facial hair, you are being
> confronted as a victim.  You are a mark.  You see the gun.  Here, take my wallet,
> take my purse.  Go.  You are overtime.
>     My last point, thank you, a person hits the stairs.  You are hysterical.  Go call
> the police, blah, blah, blah.  Next Tuesday, you come down to Greektown, you are
> out on a break.  You see the man or woman at Pegasus, dang it, that is him.  Oh, my
> god.  When you recognized it, this is the person that robbed me in the parking lot.
> Emotional reaction.  You know it is him.  You know it is her.  Guess what, you are
> here in the trial and you testify in front of a jury pool, we don't have DNA, we don't
> have videotape.  Do you want to believe?  Then believe.

*Id*. at 38-39.  Petitioner argues that this comment improperly appealed to the juror's emotions by

asking them to place themselves in the shoes of the victim.  The Michigan Court of Appeals rejected

this claim, reasoning:

> Here, the prosecutor did not ask the jury to convict defendant based on emotions or
> sympathy.  Rather, viewed in context, the prosecutor was responding to defense
> counsel's argument that Myers's testimony was not credible.  The prosecutor's
> remarks, although a bit inartfully phrased, seemingly urged the jurors to use their
> common sense in considering Myers's failure to immediately identify defendant and
> in considering her behavior in relation to seeing defendant after the shooting.  That
> is, the prosecutor was asking the jury to consider the circumstances from Myers's
> perspective in evaluating the credibility of her testimony.

*Sims*, 2012 WL 5193211, at *4.  The Court should conclude that this determination was reasonable.

Petitioner cannot show that the prosecutor's comment was improper.  As the Michigan Court

of Appeals correctly explained, the prosecutor did not ask the jurors to place themselves in the

victim's place in order to garner sympathy for the victim; rather, the context makes clear that the

prosecutor was merely asking the jury to place themselves in Myers's place in order to assess her

credibility based on defense counsel's cross-examination of her and counsel's arguments.  The

21

comments were thus a fair comment on the evidence, and a fair response to defense counsel's denigration of the victim. *See Darden*, 477 U.S. at 182. Moreover, even if improper, the prosecutor's comment was much less prejudicial than other comments referring to victims which have been upheld on habeas review. *See, e.g.*, *Brechen v. Reynolds*, 41 F.3d 1343, 1355-56 (10th Cir. 1994); *United States ex. rel. Rockman v. DeRobertis*, 717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's reference to victim "in his grave crying out for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp. 867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair trial where, during the guilt-innocence phase of the trial, the prosecutor admonished the jury not to forget the victim because "he had a right to live."), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1999) (en banc). "Indeed, *Darden* itself held that a closing argument considerably more inflammatory than the one at issue here did not warrant habeas relief." *Parker*, 132 S. Ct. at 2155 (citing *Darden*, 477 U.S. at 180, nn. 11 & 12 (prosecutor referring to defendant as an "animal" and stating "I wish I could see [the defendant] with no face, blown away by a shotgun.")). Finally, any potential prejudice was cured by the trial court's instruction to the jury that it must decide the case solely on the evidence and "must not let sympathy or prejudice influence your decision." Trial Tr., Vol. V, at 40; *see Baylor v. Renico*, No. 05-CV-71624, 2009 WL 982212, at *7 (E.D. Mich. Apr. 13, 2009) (Hood, J.); *Welch v. Burke*, 49 F. Supp. 2d 992, 1006 (E.D. Mich. 1999) (Cleland, J.).

### b. Attack on Witness's Credibility (Claim V.A)

Petitioner next contends that the prosecutor committed misconduct by impeaching Farish's credibility with evidence of Farish's prior convictions for unlawfully driving away an automobile and disarming a police officer. Petitioner contends that these convictions were not admissible to

impeach Farish under MICH. R. EVID. 609.  The Michigan Court of Appeals rejected petitioner's claim, explaining that "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence," and reasoning that "[r]egardless of the admissibility of the evidence, defendant wholly failed to argue, let alone establish, that the prosecutor's efforts to get the evidence admitted were done in bad faith." *Sims*, 2012 WL 5193211, at *6.  This determination was reasonable.  A prosecutor's good faith efforts to have evidence admitted do not amount to misconduct. *See Sweet v. Delo*, 125 F.3d 1144, 1154 (8th Cir. 1997); *Hammond v. Michigan Parole Bd.*, No. 04-73385, 2006 WL 2161028, at *16 (E.D. Mich. July 31, 2006) (Roberts, J., adopting Recommendation of Komives, M.J.).  Here, petitioner has offered nothing to show that the prosecutor's efforts to have Farish's prior convictions admitted for impeachment purposes was done in bad faith.  Thus, petitioner is not entitled to habeas relief on this claim.

### c. Bolstering (Claim V.B)

Petitioner next contends that the prosecutor improperly bolstered Myers's testimony with evidence that she had made prior statements consistent with her trial testimony.  As with the previous claim, the Michigan Court of Appeals reasonably concluded that petitioner could not show misconduct by the prosecutor's good faith effort to have evidence admitted.  Moreover, petitioner cannot show that the introduction of this evidence was improper.  Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v.*

23

*Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[3]  Petitioner does not argue that either occurred

here.  Rather, petitioner argues merely that the prosecutor bolstered Myers's testimony by presenting

other supportive evidence.  These types of evidentiary "[b]olstering claims have been (expressly)

held not to be cognizable on federal habeas review."  *Diaz v. Greiner*, 110 F. Supp. 2d 225, 234

(S.D.N.Y. 2000); *cf. Regan v. Hoffner*, 209 F. Supp. 2d 703, 715 (E.D. Mich. 2002) (Friedman, J.).

Further, "the admission of a prior consistent statement where the declarant is available for cross-

examination at trial, as was the case here, is not a question that rises to the level of a constitutional

violation for purposes of habeas corpus relief."  *Parr v. Berghuis*, No. 2:10-CV-13265, 2012 WL

5906860, at *8 (E.D. Mich. Nov. 26, 2012) (Borman, J.) (citing *United States ex rel. Gonzalez v.*

*DeTella*, 918 F. Supp. 1214, 1222 (N.D. Ill. 1996)); *accord Carr v. Palmer*, No. 2:11-CV-10539,

2012 WL 5379510, at *13 (E.D. Mich. Oct. 31, 2012) (citing *Regan*, 209 F. Supp. 2d at 715).  There

is "no Supreme Court decision holding that the improper use of a witness's prior consistent

statements violates the Constitution."  *Drain v. Woods*, 902 F. Supp. 2d 1006, 1037 (E.D. Mich.

2012) (Tarnow, J.); *accord Harris v. McKee*, No. 2:12-CV-13658, 2014 WL 645228, at *5 (E.D.

Mich. Feb. 19, 2014) (Cox, J.); *George v. Howes*, No. 11-cv-15082, 2013 WL 3190582, at *7 (E.D.

Mich. June 20, 2013) (Murphy, J.).  Accordingly, the Court should conclude that petitioner is not

entitled to habeas relief on this claim.

### d.  Questioning Petitioner About Employment Status (Claim V.C)

Finally, petitioner contends that the prosecutor improperly questioned him about being

unemployed and receiving government disability checks.  As with petitioner's prior two claims, the

Michigan Court of Appeals reasonably concluded that the prosecutor's questions were no more than

---

[3]Some cases referring to only the first type of comment as "vouching" and describe the second
type of comment as "bolstering."  *See Francis*, 170 F.3d at 551.

a good faith effort to admit evidence, and thus did not amount to misconduct.  Moreover, petitioner

cannot show how this testimony prejudiced him, as "the prosecutor . . . did not make an improper

character or propensity argument based upon Petitioner's economic status."  *Farr v. Davis*, No.

2:09-CV-14831, 2012 WL 707033, at *21 (E.D. Mich. Mar. 5, 2012) (Rosen, C.J.); *see also*, *Moore

v. Berghuis*, No. 2:09-CV-14111, 2011 WL 2118958, at *5 (E.D. Mich. May 27, 2011) (Cohn, J.).

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Gruesome Photograph (Claim VI)*

Petitioner next contends that he was denied a fair trial by the introduction of an autopsy

photograph depicting the bullet wound to the back of petitioner's head.  The Michigan Court of

Appeals rejected this claim, concluding that the photograph was relevant "to corroborate Myers's

and the medical examiner's testimony" because it depicted "the location, nature, and proximity of

the wound, which was relevant to show that defendant had a malicious intent when he shot Burrell,"

and that beyond the entry wound the photograph "depicted little other graphic detail and was not

overtly gruesome."  *Sims*, 2012 WL 5193211, at *7.  The Court should conclude that petitioner is

not entitled to habeas relief on this claim.

It is well established that habeas corpus is not available to remedy a state court's error in the

application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we

reemphasize that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a

federal court on habeas review "ha[s] no authority to review a state's application of its own laws.").

Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an

issue concerning the admissibility of evidence does not rise to the level of a constitutional

magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

Under Michigan law, "[i]f photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they vividly portray the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion and prejudice of the jury." *People v. Hoffman*, 205 Mich. App. 1, 18, 518 N.W.2d 817, 826 (1994). As a federal constitutional matter, "[t]he admission of relevant photographs of a crime scene or victim, even if gruesome, does not deprive a criminal defendant of a fair trial." *Skrzycki v. Lafler*. 347 F. Supp. 2d

26

448, 455 (E.D. Mich. 2004) (Gadola, J.); *see also*, *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997) (admission of gruesome photographs generally does not "raise[] the specter of fundamental unfairness such as to violate federal due process law."); *Pearl v. Cason*, 219 F. Supp. 2d 820, 830 (E.D. Mich. 2002) (Edmunds, J.) ("[A] challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude."); *cf. Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005).  Because the location of the wound was relevant to whether petitioner acted with malice aforethought, the admission of the photograph did not deprive petitioner of a fair trial.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.    *Ineffective Assistance of Counsel (Claims II-IV, X)*

Petitioner next raises several ineffective assistance of counsel claims.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be

27

followed." *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption

exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See*

*id*.  at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must

overcome the presumption that, under the circumstances, the challenged action 'might be considered

sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize

that counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  With respect to the

prejudice prong, the reviewing court must determine, based on the totality of the evidence before

the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt."  *Id*. at 695.  It is petitioner's burden to establish the

elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v.*

*Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

　　As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v.*
> *Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An
> ineffective-assistance claim can function as a way to escape rules of waiver and
> forfeiture and raise issues not presented at trial, and so the Strickland standard must
> be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the
> integrity of the very adversary process the right to counsel is meant to serve.
> *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the
> standard for judging counsel's representation is a most deferential one. Unlike a later
> reviewing court, the attorney observed the relevant proceedings, knew of materials
> outside the record, and interacted with the client, with opposing counsel, and with
> the judge. It is "all too tempting" to "second-guess counsel's assistance after
> conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*,

28

535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

        Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

        2.    *Analysis*

              *a.  Failure to Request Accident Instruction (Claim II)*

Petitioner first contends that counsel was ineffective for failing to request an accident instruction.  The Michigan Court of Appeals rejected this claim, reasoning:

> Considering the defense theory and the evidence adduced at trial, defense counsel's failure to request an accident instruction was not objectively unreasonable.  One significant problem with requesting such an instruction is that the evidence of accident was scant at best.  But more importantly, it is reasonable to not have the jury consider two disparate defense theories at the same time.  Presenting to the jury that defendant was not present at the scene of the shooting and even if he was present, it was an accident, would only have likely caused the jury to discount evidence related to defendant's innocence.

*Sims*, 2012 WL 5193211, at *3.  This determination was reasonable.

Decisions about what defenses to pursue or not pursue are "[a]mong the 'virtually unchallengeable' tactical decisions left to the judgment of trial counsel." *Gluzman v. United States*, 124 F. Supp. 2d 171, 174 (S.D.N.Y. 2000).  "To counteract the natural tendency to fault an

unsuccessful defense, a court reviewing an ineffective assistance of counsel claim must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (quoting *Strickland*, 466 U.S. at 689); *see also*, *Griffin v. McVicar*, 84 F.3d 880, 888 (7th Cir. 1996) ("[T]he mere fact that a defendant chooses one of two available defenses cannot establish ineffective assistance of counsel, even if the defendant makes a bad choice."). "Simply because counsel was unsuccessful does not make him ineffective for Sixth Amendment purposes." *Mayes v. United States*, 93 F. Supp. 2d 882, 891 (E.D. Tenn. 2000). Moreover, "in assessing the reasonableness of counsel's choice of what defense to pursue, it is not enough to look at the likelihood of success of the defense chosen; a reviewing court must also consider the viability of the defenses which counsel chose not to pursue." *Huckaby v. Lafler*, No. 2:09-cv-10030, 2010 WL 5104844, at *8 (June 28, 2010) (Komives, M.J.), *magistrate judge's report adopted*, 2010 WL 5105155 (E.D. Mich. Dec. 9, 2010) (Battani, J.).

Here, petitioner testified that he was not involved in the shooting, and offered the testimony of his girlfriend to corroborate his version of events. In light of this testimony, it was reasonable for counsel to pursue that defense at trial. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). This is particularly so in light of the fact that Myers, the sole witness to the crime, was subject to substantial impeachment by counsel. A defense of accident, for which there was no evidence apart from Myers's supposition that the car door must have hit petitioner's arm, would have been wholly inconsistent with petitioner's testimony that he was not involved in the crime. "Many courts have concluded that a decision not to present inconsistent defenses cannot be condemned as ineffective." *Wilson v. United States*, 414 F.3d 829, 831 (7th Cir. 2005) (citing

30

cases); *see Jackson v. Shanks*, 143 F.3d 1313, 1326 (10th Cir. 1998) ("Trial counsel's decision not to present inconsistent defense theories does not constitute ineffective assistance."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Object to Prosecutorial Misconduct (Claims III & X.A)

Petitioner next contends that counsel was ineffective for failing to object to the instances of prosecutorial misconduct identified above. The Michigan Court of Appeals rejected this claim, concluding that petitioner could not establish that counsel was ineffective either because the prosecutor's conduct was not improper, or because petitioner was not prejudiced by the conduct. *See Sims*, 2012 WL 5193211, at *5, *6. This determination was reasonable. As explained above, with respect to each claim petitioner either cannot show that the prosecutor's conduct was improper, or that he was prejudiced by the prosecutor's conduct. With respect to the comments which were not improper, any objection would have been futile. It is well established that counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). And as explained above any comments that may have been improper were not sufficiently prejudicial to deprive petitioner of a fair trial. It therefore follows that petitioner was not prejudiced by counsel's failure to object to the comments. *See White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Object to Evidence of Prior Convictions (Claim IV)

Petitioner next contends that counsel was ineffective for failing to object to the use of two prior convictions to impeach petitioner.  The Michigan Court of Appeals rejected this claim, concluding that counsel was not ineffective because petitioner could not show that the convictions were improperly admitted under MICH. R. EVID. 609.  *See Sims*, 2012 WL 5193211, at *5.  In analyzing petitioner's ineffective assistance of counsel claims, this expression of state law is binding on this Court.  *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999).  *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action.").  "And because the evidence was admissible under state law, petitioner cannot show that any objection to the evidence . . . would have been successful. It follows, therefore, that petitioner cannot show that counsel was deficient, or that he was prejudiced by counsel's failure to object." *Lucas v. Rivard*, No. 2:10-CV-14948, 2012 WL 5990221, at *16 (May 11, 2012) (Komives, M.J) (citing *Keller v. Larkins*, 251 F.3d 408, 419 (3d Cir. 2001); *Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993)), *magistrate judge's report adopted*, 2012 WL 5989857 (E.D. Mich. Nov. 30, 2012) (Hood, J.); *accord Hetzer v. Trombley*, No. 04-74971, 2006 WL 587487, at *6 (E.D. Mich. Mar. 10, 2006) (Tarnow, J., adopting Report of Komives, M.J.).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d. Failure to Object to Response to Jury Request (Claim X.B)

In his final ineffective assistance claim, petitioner contends that counsel was ineffective for failing to object to the trial court's refusal to provide the jury with transcripts of the testimony as

requested by the jury. The Michigan Court of Appeals's rejection of this claim, *see Sims*, 2012 WL 5193211, at *8, was reasonable. Petitioner does not dispute that the transcript was unavailable at the time of the jury's request, and that it would take several days to prepare a transcript. This being the case, petitioner does not explain what counsel could have done to object to the trial court's refusal to provide a transcript. Further, petitioner cannot show that counsel's failure to object was deficient. The jury requested the transcripts of the two principal prosecution witnesses. It is possible, as petitioner speculates, that a review of this testimony would have led the jury to find that Myers was not credible in her identification of petitioner, but it is equally plausible that a review of the testimony would have confirmed the jury's ultimate acceptance of her testimony. "The question is whether the jury, upon reviewing the requested transcripts, would have found anything that it had missed the first time around that was particularly beneficial to petitioner." *Carter v. Wolfenbarger*, 347 Fed. Appx. 205, 213 (6th Cir. 2009). Petitioner has offered no reason to think that the jury would have found any additional reason to discredit Myers's testimony. In short, the state court "necessarily concluded that there was nothing buried in this testimony that was so beneficial to [petitioner] that counsel's failure to object constituted ineffective assistance," and this "conclusion was not an unreasonable application of clearly established Supreme Court precedent." *Id*. at 214. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Cumulative Error (Claim IX)*

Finally, petitioner contends that he is entitled to habeas relief on the basis of the cumulative effect of the errors he identifies in his habeas petition. The Michigan Court of Appeals rejected this claim, concluding that "[b]ecause there are no errors to cumulate, a cumulative effect of errors is incapable of being found." *Sims*, 2012 WL 5193211, at *8 (internal quotation omitted). This

33

determination was reasonable.  It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting); *accord Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983).  This rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process.  *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994). As noted and discussed in this Report, none of petitioner's claims establish constitutional error, and thus his cumulative error claim fails.  Further, because the Supreme Court has never held that non-prejudicial errors may be cumulated to grant habeas relief, *see Lorraine*, 291 F.3d at 447, "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

K.      *Recommendation Regarding Certificate of Appealability*

        1.      *Legal Standard*

        As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S.

880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory

35

committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.   *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  As explained above, Myers's testimony, if believed by the jury (as it was), was more than sufficient to prove that petitioner killed Burrell, and that he did so with malice aforethought.  Thus, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable.  Because petitioner did not request an accident instruction, and because such an instruction was not supported by the evidence, it is clear that the failure of the trial court to give an accident instruction did not deprive petitioner of a fair trial, and thus the resolution of this claim is not reasonably debatable.  It is likewise clear, and thus not reasonably debatable, that the introduction of the autopsy photograph did not deprive petitioner of a fair trial and does not raise a cognizable basis for habeas relief.  It is equally beyond reasonable debate that petitioner's cumulative error claim provides no basis for habeas relief.  Finally, for the reasons explained above, the resolution of petitioner's prosecutorial misconduct and ineffective assistance of counsel claims is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

L.   *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny

petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: September 08, 2014                    S/Paul J. Komives
                                                           PAUL J. KOMIVES
                                                           UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 8, 2014, electronically and/or by U.S. Mail.

                                                           s/Michael Williams
                                                           Case Manager for the
                                                           Honorable Paul J. Komives